# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JOHN LAKE, on behalf of himself and others similarly situated**, | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) Case No.: 4:15-CV-339-VEH ) ) |
| **MARSHALL-DEKALB ELECTRIC COOPERATIVE,** | ) ) ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND
## ORDER DENYING MOTION TO REMAND

### I.     INTRODUCTION

On January 26, 2015, plaintiff John Lake ("Mr. Lake") filed a class action complaint against defendant Marshall-DeKalb Electric Cooperative ("Marshall-DeKalb") in the Circuit Court of Marshall County, Alabama. (Doc. 1-1 at 4). Marshall-DeKalb is an electric cooperative that purchases electricity from the Tennessee Valley Authority ("TVA") and sells it to customers. Mr. Lake is a member of Marshall-DeKalb. (*Id.* at 5). His action seeks a declaration that the putative class that he represents is entitled to a refund of excess revenues as "patronage capital" from Marshall-DeKalb pursuant to Alabama law. (*Id.* at 4-5).

On February 25, 2015, Marshall-DeKalb removed the action to this court. (Doc.

1). The case is presently before the court on Mr. Lake's motion to remand ("the Motion"), filed on March 26, 2015. (Doc. 16). The Motion alleges that this court lacks subject matter jurisdiction over this case. (*Id.*). Marshall-DeKalb has filed a response in opposition to the motion (Doc. 18), to which Mr. Lake has replied (Doc. 20). Therefore, the matter is now under submission. For the following reasons, the court **DENIES** the Motion.

## II.    BRIEF STATEMENT OF FACTS

The TVA is an agency of the United States established by the Tennessee Valley Authority Act ("the Act") for the purpose of, among other things, providing electricity throughout the Tennessee Valley, including parts of Northern Alabama. 16 § U.S.C. 831 *et seq.* The Act provides that the TVA's Board of Directors is authorized to sell surplus power "to States, counties, municipalities, corporations, partnerships, or individuals . . . and to carry out said authority, the Board is authorized to enter into contracts for such sale." 16 § U.S.C. 831i. The Act also states that the Board of Directors "is authorized to include in any contract for the sale of power such terms and conditions, including resale rate schedules, and to provide for such rules and regulations as in its judgment may be necessary or desirable for carrying out the purposes of this [Act]." *Id.*

Marshall-DeKalb is a cooperative corporation created under the law of

Alabama. (*See* Doc. 18-2 at 2). On December 30, 1981, Marshall-DeKalb and the TVA entered into a contract[1] whereby Marshall-DeKalb would sell electricity produced by the TVA. (*Id.*). The contract stipulates that resale rates — the rates by Marshall-DeKalb charges to its customers — must conform to the TVA's "Schedule of Rates and Charges." (*Id.* at 5). Furthermore, the contract specifies that any change (including a decrease) to the rates must be agreed upon by both parties. (*Id*. at 5-6). A "Schedule of Terms and Conditions" incorporated in the contract gives specific procedures that govern when and how the parties can make adjustments to Marshall-DeKalb's resale rates. (*Id*. at 18-20). Additionally, the contract limits the possible uses Marshall-DeKalb can make of revenue earned from the sale of TVA-produced electricity. Any surplus revenue (revenue remaining after electric system operating expenses, debt payments, and reasonable reserves) is to be used for new construction or early debt retirement. (*Id.* at 6).

## III. APPLICABLE LAW

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). For removal to be proper, the court must have

---

[1] The contract was extended until 2017 in an agreement executed on October 1, 1997. (Doc. 18-2 at 27).

subject matter jurisdiction in the case. The notice of removal in this case premises jurisdiction on 28 U.S.C. § 1442, which states,

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a). It is well-established that private parties can qualify as "acting under" a United States agency or officer. *See, e.g., Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (applying this section to "non-governmental defendants").

The Supreme Court has explained that the "basic purpose" of the removal jurisdiction in 28 U.S.C. § 1442(a) is

> to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting within the scope of their authority. State-court proceedings may reflect local prejudice against unpopular federal laws or federal officials. In addition, States hostile to the Federal Government may impede through delay federal revenue collection or the enforcement of other federal law. And States may deprive federal officials of a federal forum in which to assert federal immunity defenses.

*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150 (2007) (internal citations and quotation marks omitted). The Court has stated that § 1442(a) "must be liberally construed." *Id.* at 147.[2]

## IV.   ANALYSIS

The Eleventh Circuit has laid out a two-part[3] test for removing under 28 U.S.C. § 1442(a) . First, "the defendant must advance a colorable defense arising out of his duty to enforce federal law." *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996). Second, the defendant must establish a "causal connection," i.e., that the lawsuit arises from actions taken pursuant to official authority. *Id.* at 1427-28. In this case, both parts of the two-part test laid out in *Magnin* are satisfied. The two parts will be addressed in turn.

### A.   The Defendant Has A Colorable Federal Defense

To meet the first element, the removing defendant must only allege a federal defense that is "plausible," not one that ultimately is determined valid. *Magnin*, 91

---

[2] This makes the statute a rare exception to the general rule that federal courts construe removal statutes strictly. *See, e.g., City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012).

[3] Some district courts within this circuit have added a third element to this test: that the defendant "acted under the direction of a federal officer." *See, e.g., Alfa Mut. Ins. Co. v. Nicholson*, No. 1:13-CV-322-MEF, 2014 WL 903126, at *3 (M.D. Ala. Mar. 7, 2014). It is not apparent to the court how this element could be considered separately from the second element: the requirement of a causal connection between the defendant's action and the plaintiff's claim. To the extent that it might be considered a separate element, the court considers it adequately addressed by the analysis in Section IV.B of this memorandum opinion and order.

F.3d at 1427. The removal petition alleges that Mr. Lake's claims are preempted by the TVA Act because these claims arise under Alabama state law and would impose obligations that conflict with the terms and conditions of the contract between the TVA and Marshall-DeKalb. (Doc. 1 at 9-10; *see also* Doc. 18 at 18-19). Marshall-DeKalb argues that the TVA Act gives "a broad grant of discretion to the TVA Board to set power rates at the consumer level and dictate how excess revenues generated by Defendant are used," and that this authority "is not subject to modification or interference by state legislation." *Id.* at 9. Marshall-DeKalb goes on to argue that Mr. Lake's claims are not subject to judicial review under the TVA Act. *Id.*

    Mr. Lake disputes the existence of a colorable federal defense. He argues that the TVA Act has only been found to preclude "direct claims against the TVA challenging its rate-making authority," as opposed to a claim against another party. (Doc. 16 at 8-9). It is worth reiterating here that the standard for a defense to be colorable is not whether the defense is ultimately determined to be valid, but whether it is <u>plausible</u>. *Magnin*, 91 F.3d at 1427. A survey of case law involving the TVA does not find support for Mr. Lake's contention that the TVA Act precludes only "direct claims against the TVA" and not claims against distributors. Indeed, the Sixth Circuit affirmed a decision which suggests the exact opposite to be true. *See Ferguson v. Elec. Power Bd. of Chattanooga, Tenn.*, 378 F. Supp. 787, 789-90 (E.D. Tenn. 1974), *aff'd*

6

*sub nom. Ferguson v. Elec. Power Bd. of Chattanooga*, 511 F.2d 1403 (6th Cir. 1975) (holding that state law usury claim against <u>municipal distributor of electricity</u>, which purchased electricity through contract with TVA, <u>was precluded</u> by the TVA Act's grant of rate-making authority to the TVA). It is true that, in *Ferguson*, the TVA was joined as a co-defendant with the distributor, but the court dismissed the claim as to both defendants on the ground of the TVA Act, and made no mention of the TVA's status as a party as a reason for dismissal. *Id* at 790. In any case, this argument by Mr. Lake certainly does not go so far as to show that Marshall-DeKalb's federal defense does not reach the level of "colorable."[4]

  Mr. Lake also argues that the TVA Act "does not address excess revenues retained by Alabama electric cooperatives." (Doc. 16 at 9). Although he is technically correct that the TVA Act does not explicitly discuss excess revenue retention, it is clear that the issue of rate-making is not separable from that of excess revenues. A refund of revenues is more or less functionally equivalent to a rate reduction, as shown by Alabama law and Mr. Lake's own complaint. The portion of the Alabama Code upon which Mr. Lake relies states that electric cooperatives' excess revenues "shall be distributed [to members] . . . <u>either</u> as patronage refunds . . . <u>or</u> by way of general

---

[4] Additionally, the court is granting the TVA's Motion to Intervene (Doc. 13) in this case contemporaneous with this order.

rate reductions." Ala. Code § 37-6-20 (emphasis added). In the same vein, Mr. Lake's complaint requests "a permanent injunction requiring the Defendant to distribute excess revenue each year <u>in the form of either refunds and/or rate reductions</u>." (Doc. 1-1 at 10) (emphasis added).

Therefore, Marshall-DeKalb has made out a colorable defense that federal law preempts this claim, and established the first element required to remove under § 1442(a).

### B. A Causal Connection Exists Between The Acts Giving Rise To The Complaint And The TVA's Directions

The Second Circuit has helpfully explained the causal connection requirement in the context of non-governmental defendants: "such entities must demonstrate that the acts for which they are being sued . . . occurred because of what they were asked to do by the Government." *Isaacson*, 517 F.3d at 137. This requirement is "quite low." *Id*. The Supreme Court has directed courts to consider "the [defendant's] theory of the case for purposes of the jurisdictional inquiry." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 424 (1999). If there is a question as to whether the removing defendant actually acted pursuant to official authority when committing the acts that gave rise to the suit, "then [the defendant] should have the opportunity to present [its] version of the facts to a federal, not a state, court. . . . [and] the validity of [its] defenses should be determined in the federal courts. " *Willingham v. Morgan*, 395 U.S. 402, 409

(1969).

Mr. Lake cites several district court cases for the proposition that a removing defendant must show that it was under the "direct and detailed control" of a federal agency. (Doc. 20 at 6-8). He goes on to argue that the TVA does not have "direct and detailed control" of patronage capital, and so Marshall-DeKalb cannot meet this standard. (*Id.* at 7). However, the language he cites for the "direct and detailed control" standard is taken out of context; it stems from cases where defendants claimed only the fact of federal regulation as a causal connection. (*See id.* at 7-8). In these cases, the courts held that federal regulations cannot bring a party within the meaning of § 1442(a) unless they subject the party to "direct and detailed control." (*See id.*). Marshall-DeKalb does not point to any federal regulations as a causal connection, but rather to obligations arising from contracts with the TVA pursuant to the agency's congressionally granted authority. Therefore, the "direct and detailed control" standard does not govern the present case.

Marshall-DeKalb easily meets the standard for a causal connection. A sworn declaration from Dwain Lanier, the TVA's Vice President of Operations and Regulatory Assurance, states that the TVA does not permit its distributors to give patronage refunds, as it considers them to be equivalent to a rate reduction. (Doc. 18-1

9

at 4).[5] As discussed in the preceding section, the court agrees that the two are functionally almost equivalent, and, apparently, Alabama law and Mr. Lake himself (as evidenced by his complaint) also so agree. Mr. Lake focuses extensively on the language of the contract, arguing that its terms do not actually require Marshall-DeKalb to withhold patronage refunds. (Doc. 16 at 6-7, Doc. 20 at 11-12). However, whether or not there is a causal connection does not require determining whether TVA's interpretation of the contract is correct. Even if Mr. Lake is correct that the contract is best interpreted <u>not</u> to prohibit Marshall-DeKalb from giving a patronage refund, Lanier's declaration is still sufficient evidence that the TVA <u>has a policy</u> prohibiting distributors such as Marshall-DeKalb from granting patronage refunds. Therefore, when Marshall-DeKalb declined to distribute patronage refunds — the acts for which it is being sued — it did so because it "was asked to do [so] by the Government." *Isaacson*, 517 at 137. This meets the standard for a causal connection, thereby establishing the second element for removal under 28 U.S.C. § 1442(a).

---

[5] Mr. Lake argues that Lanier's declaration constitutes "expert testimony regarding the interpretation of a contract," which is inadmissible except in the case of ambiguity in the contract. (Doc. 20 at 10). However, it appears to the court that Marshall-DeKalb offers the declaration not to prove a particular interpretation of a contract term, but rather to show that the TVA does not permit Marshall-DeKalb to distribute patronage capital. (*See* Doc. 18 at 26 (discussing "TVA's statement that Defendant is not permitted to distribute patronage capital under the TVA Contract")).

## V.     CONCLUSION

As the requirements for removal under 28 U.S.C. § 1442(a) are satisfied, the court determines that it has subject matter jurisdiction over this removed action. Mr. Lake's Motion To Remand is due to be and hereby is **DENIED.**

**DONE** and **ORDERED** this 14th day of May, 2015.

                                                                        _____
                                                                        **VIRGINIA EMERSON HOPKINS**
                                                                        United States District Judge